# EXHIBIT

# D

| | |
|---|---|
| STATE OF SOUTH CAROLINA ) | IN THE FAMILY COURT |
| ) | 24    239 |
| COUNTY OF AIKEN ) | CASE NO. 20-DR-02-1019 |
| ) | |
| MANUEL ALEXANDERHILL ) | |
| ) | |
| PLAINTIFF ) | |
| ) | ORDER |
| VERSUS ) | |
| ) | |
| JESSICA NICOLE PENNINGTON HILL ) | |
| ) | |
| DEFENDANT ) | |

DATE OF HEARING: JANUARY 15, 2025
PRESIDING JUDGE: HON. VICKI SNELGROVE
ATTORNEY FOR PLAINTIFF: JOHN HARTE
ATTORNEY FOR DEFENDANT: AMANDA KEEN
GUARDIAN AD LITEM: JACKIE BUSBEE
COURT REPORTER: Beth Lyons

This matter came before the Court in Aiken County on January 15, 2025. The plaintiff by a motion seeks a change in the prior order. Both parties were present for the hearing along with their attorneys. Appearing for the plaintiff was John W Harte of the Aiken Bar. Appearing for the defendant was Amanda Keen also of the Aiken Bar. The hearing was conducted by affidavit and argument of counsel. The Court heard from the Guardian ad litem.

Based on the record before me I find that the parties are properly before the Court and this Court has jurisdiction over the parties and the subject matter of this action.

The parties to this action are residents and citizens of Aiken County, state of South Carolina. The parties were divorced by an Order of this Court. They are the parents of three minor children to wit: KCH (D.O.B. XX-XX-2011), JBH (D.O.B.X/X/2014) and CEH (D.O.B. XX-XX-2016) The Divorce Decree granted primary custody to the Defendant. The defendant was prohibited

FILED
AIKEN COUNTY
JAN 28 2025  12:10AD
CLERK OF COURT

from allowing John Bradshaw to be in the presence of the children.

The plaintiff in the motion before the Court seeks to change the prior order by placing the children in his custody.

The affidavits filed by the plaintiff lead this Court to conclude that the current custodial arrangement is not in the best interest of the children. For the purpose of this pendente lite order, I find that the defendant has not complied with the prohibition related to John Bradshaw. The prior order prohibiting John Bradshaw from coming into contact with the children has not been altered or amended and it remains in full force. In addition, the defendant has married John Bradshaw.

The defendant denies violating the order and through counsel questioned the accuracy of the private investigator's report. The private investigator's report is a sworn document and the questions raised by the attorney for the defendant, while well-presented, are not sufficient to justify completely disregarding that report.

The Guardian ad litem provided the court with information including her concern about shooting in the direction of the Plaintiffs' home and the fact that the children are being given for too much information about this litigation. The Guardian ad litem pointed out that the statements of the children in some instances were hard to believe reports of misconduct by their father. The Guardian ad litem advised the court that the children are not afraid of their mother or their father and that they get along well with the father's fiancé. The children did not report any fear of John Bradshaw to the Guardian.

The children have been excessively tardy to school, and they are not in counseling. These are concerns for this Court.

Taking all of the factors in the consideration as they apply to this case and being of the

opinion that the best interest of the children justifies a change, I find that the plaintiff should be granted pendente lite custody of the children. Custody shall change to the plaintiff immediately with the plaintiff picking the children up from school on January 15, 2025. The Defendant's first visitation will occur on January 17, 2025.

This case must move to conclusion expeditiously. The facts in this case will be best developed at a trial where cross-examination will assist the Court in testing the credibility of the witnesses and the reliability of the evidence. This order is not intended to indicate what outcome should occur upon the matter being tried with live testimony.

The prior orders of this Court except as modified herein shall remain in full force.

The defendant shall have visitation pursuant to the Second Circuit parenting guidelines that copy of which will be attached to this order. The requirements set forth in those guidelines will apply to the parties in this case pending further order. In addition, the defendant will have reasonable face time phone contact with the children at least 3 times each week in addition to her visitation. The times for telephone contact will be coordinated with the plaintiff who must cooperate in scheduling those times.

The rules for conduct as set forth in the Second Circuit Parenting Guidelines shall be adhered to by both parents. The prohibition against the Defendant allowing John Bradshaw to be in contact with or in the presence of the Children remains in force.

The Plaintiff must enroll the children in counseling on or before February 1, 2025.

Exchanges for visitation shall occur at school with the defendant picking the children up from school on Fridays when she has weekend visitation. On the weekends when she has visitation she will return the children to school on Monday. The parties must select a neutral site for weekday evening

visitation exchanges. The Defendant will have visitation for the first week of Spring break. The Plaintiff has visitation for the second week of Spring break.

Using the income reported by the Plaintiff of $7,350.00 and imputing minimum wage of $1,257.00 to the Defendant, child support pending further order shall be paid by the Defendant to the Plaintiff at the rate of $300.00 per month starting on February 1, 2025. The support shall be due on the first of the month and if more than 5 days late upon affidavit from the Plaintiff will be paid through the Child Support Disbursement Unit with a 5% fee added. (This is a slight deviation from the Guidelines.) /G

As noted above, the Plaintiff shall enroll the children in counseling on or before February 1, 2025. The Plaintiff must provide the Defendant with all relevant appointment times, the identity of the counselor, and phone number of the counselor. The Plaintiff and Defendant shall be entitled to the same information from the counselor regarding the children's counseling sessions. The Counselor may not be required to disclose information from the children if the counselor in his sole discretion determines that disclosure would not be in the children's best interest.

The Guardian *ad Litem's* fee cap is hereby raised from $2,500 to $8,000.00. The unpaid balance ($3,500.00) owed to the Guardian as of the date of this Order shall be paid no later than February 28, 2024, with the Plaintiff paying $2,000.00 and the Defendant paying $1,500.00.

This case is to be mediated no later than February 28, 2025. The parties are responsible for choosing a mediator. If the parties cannot agree on a mediator, the case will be mediated by Ken Matthews from Columbia, SC. The Plaintiff will be responsible for 75% of the cost of mediation and the Defendant will be responsible for 25% of the cost of mediation.

The Guardian ad litem expressed concern about shooting in the vicinity of the plaintiff's house when the children are present. That issue was not specifically before the Court; however, this

Court admonished the parties, the Defendant's husband and the Plaintiff's fiancé by stating that carelessness with weapons is not acceptable. Any violation of the orders of this Court regarding the securing of firearms will be treated with the utmost seriousness.

The parties and all 3rd parties who are in the presence of the children must place all firearms and ammunition in a secure locked location. There shall not be any discharging of weapons in the presence of the children, nor shall any weapons be fired in the direction of a house where the children or a party to this action may be. All parties must adhere to all safety rules regarding weapons. If it becomes necessary, this Court will add parties to ensure that the children are safe.

The court noted the failure of both parents to get the children to school on time. The children are to be on time to school every day.

As noted above all prior orders of this Court remain in full force and effect and the issue of attorney's fees will be held in abeyance pending a final hearing.

Accordingly, it is hereby

ORDERED the Plaintiff is awarded primary custody of the children. Custody shall change to the Plaintiff immediately with the Plaintiff picking the children up from school on January 15, 2025. And it is.

ORDERED that the Defendant will be entitled to visitation pursuant to the Second Circuit Parenting Plan. The Defendant's first visit shall occur on January 17, 2025, beginning with pick up from school. The Defendant will have the children during the first week of spring break with the Plaintiff to have them with him during the second week of spring break. And it is.

ORDERED that all weekend visitation exchanges will take place at school drop off and pick

up as outlined above with midweek visitation exchange to occur at a neutral site. And it is.

ORDERED that the Defendant shall pay child support to the Plaintiff at the rate of $300.00 per month starting on February 1, 2025. The support shall be due on the first of the month and if more than 5 days late, upon affidavit from the Plaintiff will be paid through the Child Support Disbursement Unit with a 5% fee added.

ORDERED that he rules for conduct as set forth in the Second Circuit Parenting Guidelines shall be adhered to by both parents. The prohibition against the Defendant allowing John Bradshaw to be in contact with or in the presence of the Children remains in force.

ORDERED that the Defendant is entitled to Facetime calls with the children at least three times per week. The Plaintiff shall cooperate with the scheduling of these calls. And it is.

ORDERED that there shall not to be any discharging of weapons in the presence of the children and no firing of weapons in the direction of houses where the children may be or where either party resided even if the shooting occurs on a "shooting range" if the subject house is within the range of the weapon being fired and all parties including 3rd parties are admonished to comply with all safety rules regarding weapons. The parents are responsible for ensuring that the members of their households comply with this Order. And it is.

ORDERED that all prior Orders except those specifically altered herein remain in full force and effect. And it is.

ORDERED that the Plaintiff must enroll the children in counseling no later than February 1, 2025. The Plaintiff must provide the Defendant with all relevant appointment times, the identity of the counselor, and phone number of the counselor. The Plaintiff and Defendant shall be entitled to the same information from the counselor regarding the children's counseling sessions. The Counselor

may not be required to disclose information from the children if the counselor in his sole discretion determines that disclosure would not be in the children's best interest.

ORDERED that the Guardian *ad Litem's* fee cap is hereby raised from $2,500 to $8,000.00, The unpaid balance ($3,500.00) owed to the Guardian as of the date of this Order shall be paid no later than February 28, 2024, with the Plaintiff paying $2,000.00 and the Defendant paying $1,500.00.. And it is.

ORDERED that all attorney's fees shall be held in abeyance pending a final hearing. And it is.

ORDERED that the children shall be at school at the appointed time each school day.

ORDERED that this case is to be mediated no later than February 28, 2025. The parties are responsible for choosing a mediator. If the parties cannot agree on a mediator, the case will be mediated by Ken Matthews from Columbia, SC. The Plaintiff will be responsible for 75% of the cost of mediation and the Defendant will be responsible for 25% of the cost of mediation.

SO-ORDERED

_____
HON VICKI SNELGROVE
JUDGE OF THE FAMILY COURT FOR THE SECOND JUDICIAL CIRCUIT

January 25, 2025.

# SECOND JUDICIAL CIRCUIT
# CO-PARENTING PLAN AND GUIDELINES ON PARENTS' CONDUCT.

**Both parents have vital roles in the rearing of children, and each should be intimately involved in their day to day lives. In order to facilitate each parent's involvement, the following will apply:**

I. <u>**VISITATION SCHEDULE:**</u>

A. **WEEKEND/MIDWEEK VISITATION:** The parents shall alternate weekends from A.\_\_\_Friday at 6:00 p.m. until Sunday at 6:00 p.m or B. ✓ from the time school is released until ~~Sunday at 6:00 p.m.~~ Each Tuesday evening after the weekend of not having the child/children, the parent not having the child/children shall have the child/children from 5:30 p.m. until 8:00 p.m. Regular weekends are superseded by the other specific visitation set forth below. *[handwritten: Monday morning to return to school]*

B. **HOLIDAY VISITATION:**
  1. **Christmas Visitation:** In even-numbered years, the mother shall have the child/children from the day school is released for the break until Christmas Day at 3:00 p.m. The father shall have the child/children from 3:00 on Christmas Day until New Year's Day at 3:00 p.m. In odd years this visitation shall reverse and the father will have the time prior to Christmas and the mother shall have the second part.
  2. **Fall Break:** For the 2023-2024 school year and each year thereafter: In the even-numbered years, A. ✓ the mother shall have the first week of Fall Break vacation commencing the Friday the child is released from school at 6:00 pm. The Father shall having the child from Sunday at 6:00 pm until the Sunday prior to returning to school at 6:00 pm. In odd-numbered years the visitation shall reverse and the Father will have the first week of Fall Break and the Mother shall have the second week. B.\_\_\_\_\_ (If only one week of Fall Break) the mother will have the entire break in even-numbered years, with Father having the same in all odd-numbered years.
  3. **Thanksgiving Visitation:** The father shall have Thanksgiving visitation in even-numbered years and the mother shall have visitation in odd-numbered years. Thanksgiving shall commence at 6:00 p.m. on the last day the child/children are in school (or would be in school



1

if they were attending in the district in which they are living) and shall end at 6:00 p.m. on the following Sunday.

4. **Spring Vacation for the 2023-2024 school year and each year thereafter:** A. ✓ In the even years the father shall have the first week of Spring Break vacation commencing the Friday the children are released from school at 6:00 p.m. and ending the following Sunday at 6:00 p.m. The Mother shall have the child from Sunday at 6:00 pm until the Sunday prior to returning to school at 6:00 pm. In odd years this visitation shall reverse and the Mother will have the first week of Spring Break and the Father shall have the second week. B._____ (If only one week of Spring Break), the Father shall have the entire break in even-numbered years with Mother having the same in odd-numbered years.

5. **Mother's Day and Father's Day Weekends:** The child/children shall be with the mother for the full Mother's Day Weekend and with the father the full Father's Day Weekend from Friday at 6:00 p.m. until Sunday at 6:00 p.m.

6. **Monday/Friday Holidays or School In-Service Days:** As to any other holiday or school in-service day which occurs on a Monday or a Friday and which is recognized by the school district in which the child/children resides, the parent having the child/children for that weekend may keep the child for these days. Such visitation will start at A._____ 6:00 p.m. the day before the holiday or in-service day or B. ✓ When school is released and end at 6:00 p.m. the day of the holiday or in-service day depending on whether it occurs on a Friday or Monday. (Obviously, if the child is in a private school with different holidays and in-service days, the parties will follow the child's schedule. If weather requires make up days on in-service days, this will not apply.)

7. **Summer Visitation:** The parties will alternate the summer vacation weeks. Weekend and weekday visitation is suspended during this time. The non-custodial parent will get the children the first Friday after school is released for summer break at 6:00 p.m. (If they are released on a Friday, this is the first Friday) The parties will continue to exchange the child every Friday thereafter until 5 days before school resumes. The child shall be back in the custody of the primary custodial parent 5 days before school resumes. Each parent shall have the right to have one ten-day block of summer visitation. The father has priority of this in even-numbered years with the mother having that in odd-numbered years. The notification is to be sent no

2

VP 1/28/25

later than April 1 of each year in writing. Failure to notify by that time gives the other parent the priority that year without forfeiting the priority for the next year. The non-custodial parent's alternate weekends start the 2nd full weekend after school starts.

8. **Variation from Schedule:** The parties shall have the right to vary visitation as can be mutually agreed upon. In the event the parties vary from the schedule for any period of time, either party can require both to return to the use of the schedule by giving notice **in writing** to the other.

## II. OTHER PARENTAL GUIDELINES, RIGHTS AND INSTRUCTIONS:

A. **Contact information:** Both parents will keep the other advised as to their permanent address, e-mail address, home, cell and work phone numbers if applicable. Also, whenever a party is traveling out of the area of their permanent residence on an overnight basis with the child/children, he/she shall keep the other parent advised of his/her itinerary and contact information.

B. **Important Events:** Both parties shall timely notify the other party of any reasonably important event occurring while the child is in his/her care, such as, but not limited to: extracurricular activities, baptisms, sporting events, dance recitals, school plays, etc. Both parents may attend all such events if it is appropriate for parents to attend. When in doubt, the other parent shall be given notice.

C. **Access to Records:** Both parents shall have full and complete access to all medical providers, school records, school personnel, coaches, counselors and other professionals involved in the child's/children's lives and shall be allowed to discuss the child's/children's circumstances and needs with these providers. Each party shall inform the other party of the identity of such people and how to contact such people. Each parent shall permit and encourage communication with teachers, administrators, health care professionals, counselors, therapists or any other individual involved with the child/children.

D. **Medical Emergencies:** In the event of a medical emergency experienced by a child/children, the parent who has the child/children may make appropriate decisions to protect the health and welfare of the child/children. This is not to undermine the custodial parent's legal authority to make appropriate decisions. The visiting parent

3

*YP 1/28/25*

shall make reasonable efforts to contact the custodial parent, but shall have the authority to act and shall not delay in protecting the child/children from imminent danger. The visiting parent may sign such forms as are required by the various providers in order to address the emergency. The visiting parent shall notify the custodial parent as soon as possible as to the nature and the extent of the emergency.

E. **Failure to Pay Child Support/Denial of Visitation:** The failure to pay child support does not alter this visitation and the denial of visitation does not alter one's duty to pay child support. (Remedies such as sanctions for Contempt may apply.)

F. **Pick up and Return of child/children:** Unless otherwise specified, the visiting parent shall pick up and return the child/children A._____ from the custodial parent's residence for all periods of visitation or B. _√_ pick the child/children from school and return to the custodial parent's home. The custodial parent my not prevent/deny visitation by moving away and if the custodian moves greater than thirty (30) miles from the location where the child/children lived when the visitation order was established, the custodial parent shall have the child/children at the old location until an order or written agreement is obtained altering this location. (This is not a ruling as to the right or prohibition of one's right to move or relocate.)

G. **Notice of Relocation:** If either party moves more than thirty (30) miles from the place where he/she was living at the time of the signing of the order establishing visitation, he/she must give at least sixty (60) day notice of such move. The visitation exchange point shall not be changed except by court order or written agreement of the parties.

H. **Consultation Regarding Major Issues:** Both parents shall consult on major issues concerning the child/children such as education, health, extracurricular activities and the like. The parties shall endeavor to reach agreements on these issues and shall attempt to present a united front to the child/children. In the event the parents are unable to reach an agreement as to issues concerning the child/children, then the primary or sole custodial parent shall make the decision for the benefit of the child/children. In the event the parties do not reach a mutual agreement and the custodial parent must make the decision, the other parent shall not undermine the custodial parent's decision or convey to the child/children his or her disagreement with the custodial parent's decision in the presence of

4

*[handwritten initials and date 11/28/25]*

the child/children. The other parent shall not attempt to usurp the custodial parent's role in the event of a disagreement or countermand the custodial parent's instructions given to those individuals involved with the care, education or supervision of the child/children.

I. **Clothing:** The custodial parent shall A.____provide all clean clothing necessary for the child/children while the visiting parent is exercising visitation or B.__✓__ shall not be required to supply such clothing (except for jackets and coats). The visiting parent shall return all of the clothing to the custodial parent at the conclusion of visitation.

J. **Illness:** Each parent shall notify the other of any serious illness relating to a child while in his/her care. A serious illness is defined as one which requires the child/children to be absent from school or deviate from his or her normal schedule for two or more days. If the child requires more than one visit to a health care provider for whatever malady, the party who has the child shall notify the other of the nature of the malady and the treatment.

K. **Reference to the names of "Mother" and "Father":** The parties are directed that names such as Mom, Mommy, Mother or Dad, Daddy or Father or the like are specifically reserved for the mother and father. Neither shall permit the use of such names by the minor child/children for persons other than the mother or father.

III. **RESTRICTIONS:**

A. **Confrontations:** There shall be no form of physical or verbal confrontation between the parents in front of their child/children. Any communications between the parties concerning issues involving the child/children shall be between the parents. Third parties will not be used unless by mutual agreement of the parties. The parties will make themselves available for communications with each other as needed. When these discussions do occur, they shall be polite and confined to those discussions that are reasonably necessary for the benefit of the child/children or as mutually agreed upon by the parties.

B. **Discussions:** The parties shall not discuss issues relating to the child/children in their presence unless by mutual agreement. When discussions do take place in the presence of the child/children, the parties shall treat each other with dignity and respect to which they are entitled as parents of the child/children. The parties shall not discuss

5

KP 1/28/25

the issues of the litigation in the presence of the child/children or where the child/children may reasonably overhear such conversation. Neither parent shall post anything regarding the other parent on any type of social media without the other party's express written permission.

C. The parties shall not use the child as a messenger.
D. Both parties are to encourage the child to have a relationship with the other parent;
E. **Alcohol and/or illegal drugs:** The parties shall not excessively consume or be under the influence of alcohol or use any illegal drug use or abuse any prescription drug while the child/children are in his/her care.
F. **Profanity and Derogatory Remarks:** The parties are not to use profanity **TOWARD THE CHILDREN OR EACH OTHER.** They are not to make derogatory comments about the other parent or the other parent's friend or family members or allow others to do so in the presence of the child/children, or on social media.
G. **Boyfriend/Girlfriend:** Until a divorce is granted neither party shall permit the child/children to be in the presence of anyone with whom he/she has a romantic interest. Overnight is defined as from the hours of 10:00 p.m. until 7:00 a.m. the following morning. All parties are required to keep the child/children in a safe and moral environment at all times.
H. **School:** Both parents are required to see that the child/children properly attend school.
I. **Not Scheduling Events to Conflict with Visitation:** Neither party shall schedule (nor allow others to schedule) elective matters with the child/children on or during the other party's time unless absolutely necessary.
J. **"X" rated Movies:** In no case shall the child/children be exposed to any x-rated or pornographic material. The parents may use discretion as to the child/children watching "R" rated movies.
K. **Child/Children's Appearance:** The custodial parent shall determine the child/children's appearance, i.e., haircuts, hair color, etc. In no event shall either parent allow the minor child/children to have a body piercing, tattoos or other alterations without the express written agreement of both parties.
L. **Supervision:** At all times the child/children should be properly supervised and not left with baby sitters who are not appropriate in any manner by way of age, conduct, history, or for any other reason

6     *[handwritten initials 1/28/25]*

for which a parent has knowledge which might be adverse to the interest of the child/children.

**THIS ORDER APPLIES TO BOTH PARENTS. A VIOLATION OF ANY PART OF THIS ORDER COULD SUBJECT THE VIOLATING PARTY TO CONTEMPT SANCTIONS WHICH INCLUDE UP TO ONE (1) YEAR IN JAIL TO COERCE COMPLIANCE OR SIX (6) MONTHS IN JAIL TO PUNISH, UP TO ONE THOUSAND FIVE HUNDRED ($1,500.00) DOLLAR FINE AND UP TO THREE HUNDRED (300) HOURS AND COSTS OF COMMUNITY SERVICE. A VIOLATING PARTY MAY ALSO BE REQUIRED TO PAY THE ATTORNEY FEES AND COSTS OF THE PARTY WHO BRINGS THE ACTION TO ENFORCE AN ORDER.**

7